**Berlinda G. LOTT, Plaintiff,**

v.

**ANDREWS CENTER, and Richard Desanto, in his individual and official capacities, Defendants.**

Case No. 6:03–CV–34.

United States District Court,
E.D. Texas,
Tyler Division.

May 2, 2003.

Timothy Borne Garrigan, Stuckey, Garrigan, & Castetter, Nacogdoches, TX, for Plaintiff.

William S. Helfand, Magenhein, Bateman, & Helfand, PLLC, Houston, TX, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

DAVIS, District Judge.

Defendants Richard DeSanto ("DeSanto") and the Andrews Center (hereinafter "the Center") have filed a Motion to Dismiss for Failure to State a Claim or, in the alternative, Motion for More Definite Statement or Reply (Docket No.4). Having considered the parties' submissions and the applicable law, the Court finds that Defendants' Motion to Dismiss for Failure to State a Claim should be **DENIED** and Defendants' Motion for More Definite Statement or Reply should be **GRANTED.**

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and are assumed to be true for the purposes of Defendants' Rule 12(b)(6) Motion to Dismiss. None of the facts stated in this background section constitute findings of fact by the Court.

In February of 1992, Plaintiff Berlinda G. Lott ("Lott") began working for the Center as a Unit Manager, overseeing the operation of two group homes in Tyler, Texas. On September 1, 2002, a co-worker from the Center allegedly burglarized Lott's house. Lott reported the burglary to the Smith County Sheriff's office. After reporting the crime, the co-worker contacted Lott and told her that she needed to drop the charges. He further stated that he would make sure she lost her job if she did not drop the criminal charges. Lott refused to drop the criminal charges.

Subsequently, the co-worker made false allegations of misconduct on the part of Lott in an effort to get her fired by the Center. The allegations were investigated and determined to be unfounded. Lott returned to work on September 25, 2002 and shortly thereafter, Lott was summoned to a meeting with DeSanto, Chief Executive Officer of the Center. DeSanto told Lott that she needed to go to the Smith County Sheriff's office and drop the burglary charges against her co-worker and, further, bring back evidence that she had dropped the charges by 5:00 p.m. that afternoon, or resign from her employment with the Center. Lott informed DeSanto that she would not drop the charges against the co-worker. DeSanto then told Lott she was terminated "effective now."

On January 24, 2003, Lott filed this lawsuit alleging that Defendants' actions constitute a deprivation of her rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, redressable pursuant to 42 U.S.C.

§ 1983. In particular, Lott alleges that her pursuit of criminal charges against a co-worker is conduct protected by the First Amendment and that the Defendants terminating her employment for pursuing the criminal charges is a violation of her rights guaranteed by the Petition Clause of the First Amendment to the United States Constitution.[1]

In the instant Motion to Dismiss, Defendants argues: (1) that Lott cannot satisfy the elements necessary to state a First Amendment retaliation claim; (2) Lott has failed to allege facts which state a 14th Amendment claim;[2] (3) Lott has failed to state an actionable claim against the Center; and (4) Lott's allegations fail to overcome DeSanto's qualified immunity. In the alternative, Defendants have moved for a more definite statement or reply to DeSanto's qualified immunity claim. The Court will address these arguments in turn.

### STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). A district court should not dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). The court cannot

look beyond the face of the pleadings when ruling on such a motion. *Id.* The ultimate question for the court in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey,* 117 F.3d at 247. However a plaintiff, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

### FIRST AMENDMENT CLAIM

 The government is not permitted to compel persons to relinquish their First Amendment rights as a condition of public employment. *See Harris v. Victoria Independent Sch. Dist.,* 168 F.3d 216, 220 (5th Cir.1999). The First Amendment right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967). There is no doubt that filing a legitimate criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right.

 The Plaintiff must satisfy four elements to recover for a First Amendment retaliation claim: (1) Plaintiff must suffer an adverse employment decision; (2) Plaintiff's speech must involve a matter of public concern; (3) Plaintiff's interest in commenting on matter of public concern must outweigh the Defendant's interest in promoting efficiency; and (4) the Plaintiff's speech must have motivated the Defendant's action. *Harris,* 168 F.3d at 220 (citing cases). The first two elements are legal in nature and are for the court to

---

1. The First Amendment guarantees every citizen the right "to petition the Government for a redress of grievances." U.S. Const. Amend. I.

2. In her Response, Lott admits that she is not pursuing a 14th Amendment claim. Accordingly, the Court will not address this argument.

resolve. *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir.2001). Lott argues that since her First Amendment claim is based on the Petitions Clause, not the Free Speech Clause, she does not need to meet the public concern test.

The United States Supreme Court has not ruled on whether a section 1983 claim based on a violation of the Petitions Clause must meet the public concern test. *See Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir.2000).[3] The majority of Circuit Courts that have addressed the issue conclude that the rights at issue should not be treated differently. Accordingly, these courts hold that in order for a public employee to have a viable section 1983 claim, the petition for redress must involve a matter of public concern. *See, e.g., Tang*

*v. State of R.I., Dep't of Elderly Affairs*, 163 F.3d 7, 12 (1st Cir.1998); *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049 (2d Cir.1993), *cert. denied*, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); *Zorzi v. County of Putnam*, 30 F.3d 885, 896 (7th Cir.1994); *Rendish v. City of Tacoma*, 123 F.3d 1216, 1221 (9th Cir. 1997); *Martin v. City of Del City*, 179 F.3d 882, 889 (10th Cir.1999). The principal rationale these courts follow is that there is no hierarchy among the rights protected by the First Amendment. *See Rendish*, 123 F.3d at 1222; *Belk v. Town of Minocqua*, 858 F.2d 1258, 1261 (7th Cir.1988).[4]

■ In *Day v. South Park Indep. Sch. Dist.*, 768 F.2d 696 (5th Cir.1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 883, 88

---

**3.** This issue has reached the law reviews. *See, e. g.*, Rebecca A. Carr, Comment, *Martin v. City of Del City: A Lost Opportunity to Restore the First Amendment Right to Petition*, 74 ST. JOHN's L REV. 483, 489–91 (2000) (arguing that courts should not automatically apply the standard governing a public employee's freedom of speech to the right to petition); Margo Pave, Comment, *Public Employees and the First Amendment Petition Clause: Protecting the Rights of Citizen–Employees Who File Legitimate Grievances and Lawsuits Against Their Government Employers*, 90 Nw. U.L.REV. 304, 306–07 (1995) (same); Kara Elizabeth Shea, Recent Development, *San Filippo v. Bongiovanni: The Public Concern Criteria and the Scope of the Modern Petition Right*, 48 VAND. L.REV. 1697, 1730–34 (1995) (noting that the Framers explicitly established the right to petition in the Constitution and propounding that it is distinct from the freedom of speech); Julie M. Spanbauer, *The First Amendment Right to Petition Government for Redress of Grievances: Cut from a Different Cloth*, 21 HASTINGS CONST. L.Q. 15, 34–39 (1993) (same).

**4.** It appears that only the Third and Sixth Circuits have adopted a different rule. In *San Filippo v. Bongiovanni*, 30 F.3d 424, 439 (3d Cir.1994), *cert. denied*, 513 U.S. 1082, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995), the Third Circuit addressed the issue of whether "there are contexts in which the petition clause pro-

tects values additional to those protected by the speech clause." The Court concluded:

> The first amendment's petition clause imposes on the United States an obligation to have at least some channel open for those who seek redress for perceived grievances.... [W]hen government—federal or state—formally adopts a mechanism for redress of those grievances for which the government is allegedly accountable, it would seem to undermine the Constitution's vital purpose to hold that one who in good faith files an arguably meritorious "petition" invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur.

Id. at 442.

The Sixth Circuit has held that the "public concern" test should not be read into the Petition Clause because the Supreme Court had included, within the scope of the Petition Clause, complaints "respecting resolution of [a party's] business and economic interests...." *Gable*, 201 F.3d at 771 (quoting *California Transp. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)). The Sixth Circuit held that the Petition Clause itself is not generally limited to matters of "public concern" but includes a party's private business interests. *Id.*

L.Ed.2d 918 (1986), a school teacher alleged that the school district did not renew her teaching contract because she complained about the principal's unfavorable performance evaluation and later filed a grievance. *Id.* at 697. The Fifth Circuit held that "her actions, whether viewed as speech, petitioning, or both, related only to her supervisor's employment decisions that affected her in a purely personal manner, not to matters of political, social, or community concern." *Id.* The Court noted:

> The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression.... The Petition Clause was inspired by the same ideals of liberty and democracy that gave use the freedom to speak, publish, and assemble.... These First Amendment rights are inseparable....

*Id.* at 701 (quoting *McDonald v. Smith*, 472 U.S. 479, 482–85, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985)). Accordingly, this Court finds that the Fifth Circuit would require, if it has not already explicitly stated, a section 1983 claim based on a violation of the Petitions Clause meet the public concern test.

### i. Did Lott suffer an adverse employment action?

■ Adverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *See Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir.1998); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir.1997); *Pierce v. Texas Dep't of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994). Clearly Lott suffered an adverse employment action when her employment was terminated.

### ii. Was Lott's petition for grievance on a matter of public concern?

■ Defendants argue that Lott's speech, filing a criminal complaint against a co-worker who allegedly burglarized Lott's home, is strictly a matter of personal interest and is not a matter of public concern. "In order for speech by a public employee to enjoy constitutional protection from retaliation by a public employer, the speech must involve a matter of public concern." *Denton v. Morgan*, 136 F.3d 1038, 1042 (5th Cir.1998) (citing *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). *Connick* espouses that "whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record". 461 U.S. at 147–48, 103 S.Ct. 1684. This involves a fact specific analysis. *See Thompson v. City of Starkville*, 901 F.2d 456, 461–62 (5th Cir.1990). To rise to the level of public concern, Lott must have spoken in his role of citizen rather than as an employee addressing matters only of personal concern. *See Connick*, 461 U.S. at 147–47, 103 S.Ct. 1684. Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 146, 103 S.Ct. 1684.

■ The fact that an employee's speech contains an element of personal interest is not fatal. *See Thompson*, 901 F.2d at 463–65. An employee's speech may contain a mix of public and private concerns. *Id.* at 464. That is the case here. Personal concerns undoubtedly played a central role in Lott filing a criminal complaint with local law enforcement officials.[5] Surely, she has an interest in

---

**5.** Lott's "speech," in pursuing a criminal complaint for burglary with law enforcement officials, was "speech" in her role as a citizen. "If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance,

her safety and recovering her personal property. However, Lott's "speech" contained matters of public concern as well. The public had an interest in the filing of a criminal complaint for alleged burglary and, further, the public had an interest in an alleged burglar being prosecuted for the alleged burglary. The filing of a criminal complaint is important to effective law enforcement and certainly a matter of public concern. *Cf. Brawner v. City of Richardson, Texas,* 855 F.2d 187, 191–92 (5th Cir.1988). Accordingly, Court finds that Lott's "speech" was on a matter of public concern.[6]

iii. *Whether Lott's interest in filing the criminal complaint against a co-worker outweighs the Center's interest in promoting efficiency (Pickering Balancing Test)?*[7]

 Once the court has determined that plaintiff's "speech" addresses matters of public concern, the court must next consider whether the plaintiff's interest in free speech (here, filing the criminal complaint against a co-worker) outweighs "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Harris,* 168 F.3d at 223 (citing *Victor v. McElveen,* 150 F.3d 451, 457 (5th Cir. 1998)). The Supreme Court has recognized as relevant considerations "whether the statement [petition for grievance] impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impeded the performance of a speaker's duties or interferes with the regular operation of the enterprise." *Pickering,* 391 U.S. at 570–73, 88 S.Ct. 1731. "Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." *Rankin,* 483 U.S. at 388, 107 S.Ct. 2891. "[R]eal, not imagined, disruption is required, and the 'close working relationship' exception cannot serve as a pretext for stifling legitimate speech...." *Branton,* 272 F.3d at 741 (quoting *McKinley v. City of Eloy,* 705 F.2d 1110, 1115 (9th Cir.1983). The balancing test is not all-or-nothing but rather a sliding scale under which "public concern" is weighed against disruption: "a stronger showing of disruption may be necessary if the employee's speech more substantially involves matters of public concern." *Matherne v. Wilson,* 851 F.2d 752, 761 (5th Cir.1988) (quoting *Gonzalez v. Benavides,* 774 F.2d 1295, 1302 (5th Cir.1985)).

 At this stage of the litigation, a motion to dismiss, it is premature for the Court to apply the *Pickering* balancing test. In fact, there is nothing for the Court to balance. More specifically, the Defendants have failed to provide any evi-

the content of the speech may be public in nature." *Kennedy v. Tangipahoa Parish Library Bd. of Control,* 224 F.3d 359, 372 (5th Cir.2000).

**6.** As the Seventh Circuit has aptly stated:
[W]hen the Supreme Court in its cases establishing and bounding the rights of public employees to exercise free speech limited those rights to speech on matters of "public concern," they did not mean matters of transcendent importance, such as the origins of the universe or the merits of consti-

tutional monarchy; they meant matters in which the public might be interested.... That the public was not large, that the issues were not of global significance, and that [Plaintiff's] participation was not (we mean no disrespect) vital to the survival of Western civilization [does] not place [Plaintiff's] speech outside the orbit of protection. *Dishnow v. Sch. Dist. of Rib Lake,* 77 F.3d 194, 197 (7th Cir.1996)

**7.** *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

dence on how Lott's filing of a criminal complaint against a co-worker: (1) impaired discipline by her superiors; (2) disrupted harmony among co-worker; (3) had a detrimental impact on close working relationships for which personal loyalty and confidence are necessary; or (4) impeded the performance of Lott's duties or interferes with the regular operation of the Center.[8]

*iv. Whether Lott's "speech" was a motivating factor in the Center's decision to terminate her employment?*

 Once again, at this stage of the litigation, a motion to dismiss, it is premature for the Court to determine whether Lott's "speech" was a motivating factor in the Center's decision to terminate her employment. No discovery has been conducted. Nevertheless, it is clear that Lott is alleging that her employment was terminated for filing criminal charges against a co-worker. Further, Defendants have not come forward with any other reason for the termination of Lott's employment. Accordingly, Lott has shown, at this stage of the litigation, that her "speech" was motivating factor in the Center's decision to terminate her employment.

### MUNICIPAL LIABILITY

The Center contends that it cannot be held liable under a theory of *respondeat superior* under § 1983 because (1) the Center cannot be held liable absent a constitutional deprivation; (2) there is no unlawful conduct attributable to a policy maker; (3) "one-time" isolated acts cannot establish a governmental policy; (4) no policy was a moving force behind the con-

stitutional injury; and (5) the Center was not deliberately indifferent and, thus, the Center cannot be held liable under the theory of *respondeat superior.* The Court will address each of these arguments in turn.

First, the Center claims that Lott has failed to allege a constitutional deprivation. The Court disagrees. As stated above, Lott has alleged a constitutionally protected activity, the right to petition the government for redress of grievances, that was allegedly infringed. Accordingly, the Court rejects this argument.

Title 42 U.S.C. § 1983 (1994) provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 689, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other local governmental bodies are "persons" within the meaning of § 1983. The Supreme Court has also recognized that a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 402, 117 S.Ct. 1382, 137

---

8. In their Motion to Dismiss, Defendants' state: "[u]nquestionably, the Plaintiff's alleged actions in this matter were certain to generate controversy and disruption in the workplace. Similarly, the Plaintiff's decision to pursue personal acts of vindication impeded the Center's performance and operation and subjecting a co-worker to criminal prosecution obviously affected the working relationships necessary to the agency's proper functioning." These conclusory statements do not provide the Court with something to balance.

L.Ed.2d 626 (1997). Instead, in *Monell* and its progeny, the Supreme Court has required a plaintiff seeking to impose § 1983 liability on a municipality to identify a municipal "policy" that caused the plaintiff's injury. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Brown,* 520 U.S. at 403, 117 S.Ct. 1382; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■■■■■ To establish liability for a policy, a plaintiff must prove that (1) the local government or official promulgated a policy; (2) the decision displayed "deliberate indifference" and proved the government's culpability; and (3) the policy decision lead to the particular injury. *Bryan County,* 219 F.3d at 457. A "policy" can stem from "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations.'" *Brown,* 520 U.S. at 410, 117 S.Ct. 1382 (quoting *Pembaur,* 475 U.S. at 481, 106 S.Ct. 1292).[9] "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the county may be liable." *Brown,* 219 F.3d at 462. Under this type of "policy," a municipality can be liable only if the decision to adopt that particular course of action is properly made by that government's authorized decisionmaker. *See id.* Such "authorized decisionmaker" is defined as an official " 'whose acts or edicts may fairly be said to represent official policy'" and whose decisions may therefore result in municipal liability under § 1983. *Id.* at 480 (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). "[T]he deter-

mination of whether a municipal official wields final policymaking authority regarding a particular action constitutes a question of state law." *Brady v. Fort Bend County,* 145 F.3d 691, 698 (5th Cir.1998) (citing *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)).

■■■■ In order for a governmental entity to incur liability under § 1983 there must exist "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Piotrowski,* 237 F.3d at 580. "*Monell* describes the high threshold of proof by stating that the policy must be the 'moving force' behind the violation." *Piotrowski,* 237 F.3d at 580 (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). Accordingly, "the plaintiff must initially allege that an official policy or custom 'was a cause in fact of the deprivation of rights inflicted.'" *Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994)). This connection must be more than a mere "but for" coupling between cause and effect. *City of Canton,* 489 U.S. at 386, 109 S.Ct. 1197.

■■■■■ Further, the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown,* 520 U.S. at 410, 117 S.Ct. 1382. The Supreme Court has espoused:

---

**9.** A formal policy is "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Bennett,* 735 F.2d 861, 862 (5th Cir.1984) (en banc). An informal

but still official policy is "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*

[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Id.* at 404, 117 S.Ct. 1382. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown,* 520 U.S. at 410, 117 S.Ct. 1382.

■ Viewing the evidence in the light most favorable to Lott, at this stage, Lott has identified an authorized decisionmaker, DeSanto, whose single decision could be understood as the Center's policy. *See Piotrowski,* 237 F.3d at 578–79 (citing *Jett,* 491 U.S. at 737, 109 S.Ct. 2702; *Praprotnik,* 485 U.S. at 126, 108 S.Ct. 915; *Pembaur,* 475 U.S. at 482–83, 106 S.Ct. 1292); *Brown,* 219 F.3d at 462. Further, Lott has alleged a direct causal link between a municipal policy and the alleged constitutional deprivation—she had alleged that the DeSanto, who potentially has final decisionmaking authority regarding employment decisions, terminated her employment for her exercising her right to petition the government for a redress of a grievance. Finally, Lott has alleged that the DeSanto acted with deliberate indifference when he terminated her.

## QUALIFIED IMMUNITY

DeSanto has asserted the defense of qualified immunity. Instead of ruling on DeSanto's qualified immunity at his point, the Court will require Lott to file a Rule 7(a) ("*Schultea* Reply"), as detailed below. Accordingly, the Court will permit DeSanto to reassert his qualified immunity defense in a separate motion after Lott files her *Schultea* Reply.

## MOTION FOR MORE DEFINITE STATEMENT OR *SHULTEA* REPLY

DeSanto has requested that Plaintiff be required to file a *Schultea* reply or more definite statement pursuant to Rule 12(e). In *Schultea,* the Fifth Circuit held that a district court may require that a plaintiff filing suit under 42 U.S.C. § 1983 against a public official reply to an assertion of a qualified immunity defense pursuant to FED.R.CIV.P. 7(a). *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995) (en banc). A district court's discretion not to require a reply is narrow when greater detail would be helpful towards "[v]indicating the [qualified] immunity doctrine." *Schultea,* 47 F.3d at 1434. The Fifth Circuit has recognized that "the *Schultea* rule governing the Rule 7(a) reply is an instantiation of the more general principle that 'heightened pleading' is needed in qualified immunity cases." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir.1999).

■ DeSanto is a public official and has invoked the defense of qualified immunity. As such, the "heightened pleading" standard of particularity is required under the doctrine of qualified immunity. Plaintiff's Complaint does not meet this higher standard of particularity in pleadings. Therefore, Plaintiff must file a reply tailored to the defense of qualified immunity as asserted in Defendants' Motion to Dismiss and as presumably will be asserted in Defendants' Answer. *Schultea,* 47 F.3d at 1433–34.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for More Definite Statement or Reply is **GRANTED** and Plaintiff shall file a Rule 7(a) Reply on or before May 12, 2003. Thereafter, DeSanto may reurge his qualified immunity claim.

