**Don A. BRAWNER, Plaintiff–Appellee,**

v.

**CITY OF RICHARDSON, TEXAS, L.F. Eudy, Richardson Police Department Director, and Kenneth Yarbrough, Chief of Police, Defendants–Appellants.**

No. 87–1653
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1988.

---

Ronald M. Gaswirth, Dan Hartsfield, David T. Fenton, Dallas, Tex., for defendants-appellants.

Gary T. MacInnis, Austin, Tex., for plaintiff-appellee.

Before RUBIN, GARWOOD and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A police officer discharged ostensibly for failing to answer questions during an internal investigation filed this action invoking 42 U.S.C. § 1983 contending that he was in fact fired in retaliation for his exercise of his First Amendment right to free speech. The Chief of Police and other officials named as defendants appeal the district court's denial of summary judgment in their favor contending that the policeman was discharged for insubordination, that his speech did not address a matter of public concern and was therefore not entitled to First Amendment protection, and that, in any event, the policeman's asserted right to speak out was not clearly established at the time he was fired so as to preclude their asserting a claim of qualified immunity. That First Amendment protection extended to the statements attributed to the policeman was clearly established at the time, however, and the statements addressed a matter of public concern. Whether the policeman was discharged for making the statements or for insubordination is a genuinely disputed issue of material fact. We therefore affirm the denial of summary judgment.

I.

In February 1985, Glen Zook and Mike Catt, columnists for a newspaper published in Richardson, Texas, the Richardson Daily News, received from someone identified only as a sergeant with the Richardson Police Department a letter containing allegations that the Department's Special Investigation Division was keeping a file on them. The letter also stated that the Department had permitted an officer found in possession of cocaine to resign but kept the information concerning her resignation a secret and destroyed the officer's file in the district attorney's office. The letter added that two narcotics officers who had been involved in a recent shooting incident while executing a search warrant had not been qualified to carry the weapons used in the shooting and that the search warrant had no date on it.

The Chief of Police, Kenneth Yarbrough, who is a defendant in this case, learned of the newspaper's receipt of the anonymous letter and began an investigation to find out who wrote the letter and whether the statements in it were true. The investigation focused on four patrol officers, including the plaintiff, Don A. Brawner, apparently due to the nature of certain of their previous assignments. During the first part of the investigation, the officers cooperated in making statements and in answering prepared questions. The investigators determined that Brawner did not write the anonymous letter and that he did not know who did.

Brawner and the three other patrol officers then met with the President of the Combined Law Enforcement Agency of Texas (CLEAT). The letterhead of CLEAT states it is an organization of "police speaking for police statewide." The officers told him about the allegations made in the anonymous letter and complained about their treatment during the internal investigation. The CLEAT president agreed to have a letter sent on behalf of the officers to the Police Chief, the Mayor of Richardson, and the Richardson City Manager concerning the investigation. CLEAT's staff attorney, Gregory Zaney, then wrote a letter to the

City Manager on behalf of Brawner and the other officers. Zaney advised that he was the attorney for the four officers and requested that no further interrogations be conducted without his being present. He stated that the selection of these four officers for investigation from a much larger number constituted harassment without any factual basis. The final paragraph of his letter read:

I am formally requesting that you open an immediate investigation into the allegations contained in the anonymous letter to determine their truth or falsity. There may be serious violations of privacy should the Richardson Police Department be conducting investigations of reporters. I have also been told that secret police files in the supervisor's office of the Special Investigations Division may contain investigative files on citizens of a non-criminal nature, including candidates for City Council. I am requesting that the files not be destroyed, and that the Mayor and the City Council be allowed to view all files in the office for potential constitutional rights violations if such files contain information on them or other political candidates.

Zaney sent copies of this letter to Chief Yarbrough, the Mayor, the Mayor Pro Tem, five Richardson city councilmen, and the two reporters at the Richardson Daily News.

After receiving Zaney's letter, Chief Yarbrough initiated a second investigation, purportedly to inquire about the possible existence of the secret police files referred to in the letter. Yarbrough selected the officers named in the letter for questioning. He prepared written questions and sent them to Brawner with an order directing him to answer the questions. In a later interview with L.F. Eudy, Richardson Police Department Director of Operations, who is a codefendant in this suit, Brawner refused to answer questions until he had spoken with his CLEAT lawyer. After Brawner had refused to answer, Eudy accompanied Brawner to Chief Yarbrough's office, explained that Brawner had refused to answer the questions, and informed Yarbrough that he had told Brawner that he

was not entitled to have an attorney present due to the nature of questioning as an internal affairs investigation. Chief Yarbrough then terminated Brawner, allegedly for his insubordination in disobeying Yarbrough's order to answer the questions relating to the Zaney letter. Brawner appealed to the Civil Service Trial Board, which reduced his termination to a thirty working-day suspension without pay.

When Brawner returned to duty, the internal affairs investigation was still in progress. Two officers questioned Brawner about the letter's allegations. He responded to oral questions but still refused to answer written questions unless given an opportunity to contact his lawyer. When informed of Brawner's refusal to answer the written questions, Eudy told Brawner that his refusal to answer constituted insubordination, but that he would allow sufficient time for him to consult with an attorney. Six days later, in another interview, Brawner again refused to answer the written questions. Chief Yarbrough again advised Brawner that he was not entitled to an attorney since the questions related to an administrative investigation and not a criminal proceeding. After Brawner continued to refuse to answer questions without consulting his attorney, Chief Yarbrough terminated Brawner, again allegedly for insubordination.

Brawner then filed this suit pursuant to 42 U.S.C. § 1983. He alleged that the Police Department had required him to conduct illegal investigations and then Yarbrough and Eudy had terminated him for exercising his First Amendment rights in making that information public by way of statements made by Zaney at his request and on his behalf. His complaint also included a state-law claim pursuant to the Texas Constitution. Yarbrough and Eudy sought summary judgment based on a claim of qualified immunity. The district court denied the motion, and the two defendants appealed.

## II.

■ A denial of summary judgment based on a claim of qualified immunity is

an appealable final decision[1] to the extent that it turns on an issue of law. Although the question whether a public official is entitled to immunity is different from whether the underlying claim has merit, it will often be necessary for a reviewing court to consider the plaintiff's factual allegations in order to resolve the immunity issue.[2]

The analysis of the qualified-immunity claim requires two steps. The initial determination is whether the claim itself is viable, whether the actions of the plaintiff are constitutionally protected. In this case that inquiry is whether Brawner's speech was constitutionally protected speech within the meaning of *Rankin v. McPherson.*[3] Even if it is, then the public officials are entitled to qualified immunity unless the constitutional right asserted was "clearly established" at the time of their conduct so that a reasonable official would have understood that his conduct violated that right.[4]

A state may not discharge an employee for exercising his right to freedom of speech.[5] An employee contending that his termination from employment violated the First Amendment must initially establish that his speech addressed a matter of public concern.[6] If the speech did not address a matter of public concern, then the employee is not entitled to constitutional protection against discharge, even if he was fired for what he said.[7]

■ To determine whether speech addresses a matter of public concern, the court must examine the entire record for the content, form, and context of the statement.[8] "The courts will not interfere with personnel decisions 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.' "[9]

■ The content, form, and context of Brawner's speech support the conclusion that he was speaking not simply as an employee, but as a citizen addressing a matter of public concern. The final paragraph of Zaney's letter contains serious allegations of possible police misconduct. The letter was sent not only to the police chief, but also to the mayor, city council members, and reporters at the local paper. Additionally, the paragraph of the letter pertaining to Police Department misconduct merely reiterated previous public allegations of improper conduct by the force. Thus, the statements in the letter must be seen in the context of a continuing commentary that had originated in the public forum of the newspaper.

■ This court has held that public employees were speaking solely as employees in discussing personnel policies of university police[10] and an unfavorable employee evaluation.[11] The letter, i.e. "speech," that Brawner contends occasioned his firing, however, is more akin to the remarks that this court has found to address matters of public concern.[12] The disclosure of misbe-

1. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

2. *Id.* at 528–29, 105 S.Ct. at 2816–17.

3. —— U.S. ——, 107 S.Ct. 2891, 2896–2900, 97 L.Ed.2d 315 (1987).

4. See *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Noyola v. Texas Dept. of Human Resources,* 846 F.2d 1021, 1023 (5th Cir.1988).

5. *Rankin,* 107 S.Ct. at 2896.

6. *Id.* at 2896–97; *Page v. DeLaune,* 837 F.2d 233, 237 (5th Cir.1988).

7. *Noyola,* 846 F.2d at 1023.

8. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983); *Terrell v. University of Texas System Police,* 792 F.2d 1360, 1362 n. 2 (5th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

9. *Page,* 837 F.2d at 237 (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690).

10. *Terrell, supra,* 792 F.2d 1260.

11. *Day v. South Park Independent School District,* 768 F.2d 696, 700–01 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986).

12. *Thomas v. Harris County,* 784 F.2d 648, 653 (5th Cir.1986).

havior by public officials is a matter of public interest and therefore deserves constitutional protection,[13] especially when it concerns the operation of a police department.[14] Because the speech at issue complained of misconduct within the police department, it should be classified as speech addressing a matter of public concern.

■ The next issue is whether the state's interest in efficient management of its operations outweighs the employee's interest in commenting upon matters of public concern.[15] This involves whether the speech: (1) was likely to generate controversy and disruption, (2) impeded the department's general performance and operation, and (3) affected working relationships necessary to the department's proper functioning.[16]

■ The police officers contend that the police department's interests in conducting "thorough internal affairs investigations outweigh Brawner's interest in expressing dissatisfaction with his treatment during such an investigation." They argue that Brawner's conduct in refusing to answer the questions during the investigation substantially interfered with the discharge of his duties and undermined the authority of the police chief. This argument mischaracterizes Brawner's conduct as well as his interests at stake. In focusing only on the portion . of Zaney's letter addressing the treatment of the officers during the investigation, defendants entirely disregard the portion of the letter alleging misconduct on the part of other police officers and in the management of the Police Department. While the letter also addresses concerns about the officers' treatment during the internal investigation, it is clear that only a portion of a communication need address a matter of public concern.[17]

■ The defendant police officers did not submit any evidence, or even assert, that Brawner's statements caused conflict in the department or disruption of its normal operation. Even assuming that the department maintained an interest in a confidential internal investigation, such an interest would be outweighed by the public's interest in the disclosure of misconduct or malfeasance.[18] Further, if the allegations of internal misconduct are indeed true, Brawner's statements could not have adversely affected the proper functioning of the department since the statements were made for the very reason that the department was not functioning properly due to corruption.

■ Qualified immunity is a defense for public officials if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[19] "Clearly established" means that the contours of the right were so clear at the time the officials acted that a reasonable official would have understood that what he was doing violated that right.[20] The very action in question need not have been previously held unlawful; the unlawfulness of the official action must be apparent in light of pre-existing law.[21]

■ At the time that Zaney wrote on Brawner's behalf and Brawner was discharged, the First Amendment right of an employee to speak out on a matter of pub-

13. *Gonzalez v. Benavides*, 712 F.2d 142 (5th Cir. 1983).

14. *Solomon v. Royal Oak Township*, 842 F.2d 862, 865 (6th Cir.1988); *O'Brien v. Town of Caledonia*, 748 F.2d 403, 407 (7th Cir.1984); *Brockell v. Norton*, 732 F.2d 664, 668 (8th Cir. 1984).

15. *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687; *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

16. *See Pickering*, 391 U.S. at 569–73, 88 S.Ct. at 1735–37.

17. *See Connick*, 461 U.S. at 149, 103 S.Ct. at 1691.

18. *See Solomon*, 842 F.2d at 866.

19. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

20. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

21. *Id.*

lic concern was clearly established.[22] It was clearly established that a public employee's speech revealing improper conduct by fellow employees was protected.[23] Thus, a reasonably objective public official would have known that termination of an employee for his speech concerning misconduct by public officials would violate a clearly established constitutional right. Therefore, defendants here are not entitled to summary judgment on their claim of qualified immunity.

 Apart from the question whether Brawner's speech is constitutionally protected, defendants argue that, even if it is, the district court should have granted summary judgment for them because Brawner offered no evidence that his speech, rather than his alleged insubordination, was the motivating factor in his termination. In addition to denying summary judgment based on qualified immunity, the district court also denied summary judgment because it found that Brawner had shown a genuine factual dispute as to the reason for his termination. Taking into consideration all of the surrounding circumstances, we are not prepared to say that this is incorrect or that Brawner's deposition does not suffice to create the factual dispute. Brawner testified, for example, that he thought the questions being put to him were not in good faith but to make him the "fall guy" on illegal investigations (Dep. p. 220); and the questions "were in bad faith. The man that made the questions already knew the answers." The deposition also contains these statements:

"Q. Okay. Do you have any factual basis to believe that you were fired for any reason other than your refusal to answer the questions?

A. None that I can think of at the moment.

Q. Was there anything said to you at the time of your termination that would lead you to believe that there was any other reason for your termination?

A. No.

Q. By either the chief, by Pennington or by Burcham?

A. No."

He later testified, however:

"Q. So as a result of these unlawful, illegal records—and that's Ruhe and the dentist—your Plaintiff Brawner made public information concerning this covert activity. It says, in addition, Brawner, Plaintiff Brawner, was punished when information regarding the illegal investigations described in Paragraph 4 above became public information. How were you punished?

A. By being called in and questioned about them and then refusing to answer those questions because they were criminal in nature.

Q. Well—

A. I was punished because I authorized someone to send a letter on my behalf, and I was punished because of this letter sent by Greg Zaney.

Q. And the punishment was being called in and questioned?

A. That's part of the punishment. I was punished for having this letter sent to the people that it was sent to. That is why I was punished, this letter right here."

[The record of this part of the deposition is interrupted here.]

"Q. Okay. Do you have any facts that Chief Ken Yarbrough has a policy, custom and practice to direct police officers of the City of Richardson Police Department to engage in illegal activities under threat of discharge?

A. He has a practice of doing that. He did it with me, yes.

Q. Twice?

A. At least twice."

While Brawner must ultimately prove that his speech was the motivating factor in his discharge, the determination of that issue turns on a genuine dispute of material fact, and is a proper issue for trial, not for resolution by summary judgment.

---

**22.** *See* notes 10–14, *supra.*

**23.** *See Brown v. Texas A. & M. University,* 804 F.2d 327, 336–38 (5th Cir.1986).

Like the district court, we intimate no opinion on the ultimate merits of the litigation. We simply hold that the district court correctly denied summary judgment at this time on the record before them.

For these reasons, the judgment is AFFIRMED.